Plaintiffs instituted this suit to recover from defendant the sum of $1,000. Plaintiffs alleged they purchased and installed a new soda fountain in their place of business in Winnfield, Louisiana, and the old fountain was removed and stored in a brick warehouse to the rear of the building in which they operated; that on the night of July 14, 1941, three negro boys, all minors, broke into the warehouse and stripped the fountain of all its metal parts. That defendant operated a repair shop in Winnfield and bought and sold junk metals and other second hand articles; that he purchased from the negro boys the metal parts they had taken from the fountain, consisting of five refrigerator lids, two washers, sixteen soda pumps and all the copper tubing and lining.
Plaintiffs further alleged that defendant, with the intent to destroy the identity of the metal parts, beat and battered them in such a way as to render them useless and prevent them from being put back on *Page 326 
the fountain. That in hammering the parts defendant removed the cork and Bakelite from them and concealed them in a trash pile behind his place of business; and that the battered metal parts were placed in sacks and stored in defendant's place of business.
Plaintiffs further alleged that the above-related acts of defendant make him a joint tort-feasor with the negro boys and liable in solido for the damages. They further alleged that defendant has violated the criminal law of the State by purchasing said articles from the minors without a written statement from them as to their ownership; and that he knew or should have known the metal parts were stolen property. They alleged the value of the fountain before being stripped of its parts was $1,000 and its value afterwards only $35 to $40.
Defendant filed an exception of no cause and no right of action, which was overruled below. He reserved his rights under said exception by objecting to any evidence on the trial on the merits. Defendant then answered denying all the principal allegations of the petition. He admitted he purchased the metal parts from the minors for $1.90 and alleged that the metal had been beaten up and battered before he purchased it; and that he had no knowledge the metal had been stolen and purchased same in good faith and under circumstances not of a suspicious nature.
The lower court rendered judgment for plaintiffs in the sum of $600 and defendant is prosecuting this appeal. Plaintiffs have answered the appeal praying that the amount of the award be increased to $1,000.
In this court defendant reurges his exception of no cause and no right of action.
A well-established rule of law is that the owner of stolen goods may follow and reclaim them wherever he may find them and he may recover them or their value from any person into whose possession they have come whether innocently or otherwise. The petition alleges the parts were stolen and were found in the possession of defendant. Clearly plaintiffs are entitled to the value of the goods found in defendant's possession which had been destroyed, if for no more. This alone disposes of the exception of no cause and no right of action. The ruling of the lower court, therefore, on the exception was correct.
We are of the opinion that plaintiffs have established all the allegations of their petition with the exception of the value of the fountain. The fountain was stored in a safe place and the metal parts were stolen by the negro boys and sold to defendant. One of the little negroes, eleven years of age, testified in the case, the other two being in the armed forces of the Nation. This little boy testified that defendant, immediately after purchasing the parts, put them on an iron block — possibly an anvil — and hammered them out of shape; that he took the cork and Bakelite and put it in a trash pile in the yard behind his place of business; and that the battered metal parts were then placed in sacks.
The testimony of this youth alone would hardly be sufficient to condemn defendant but his testimony is strongly corroborated in many respects and ways. The deputy sheriff and one of plaintiffs found the battered parts in sacks in defendant's place of business and also found the cork and Bakelite from the parts in the trash pile in defendant's yard. There is no question as to correct identification of either the parts or the cork and Bakelite. The deputy sheriff and plaintiff both attempted to get some information or explanation from defendant at that time, without success. He just didn't talk. When placed on the witness stand in his own defense, he made no attempt to explain the presence of the material in his trash pile. He contented himself with the statement that the parts had been hammered up and beaten before he bought them and that the negro boys told him their papa had told them to sell the parts.
The testimony convinces us that defendant beat and battered the parts after buying them. The only reason for so doing was to prevent identification by their owner. When he destroyed the parts he likewise destroyed the value of the fountain. The parts could not be replaced on the fountain and like parts cannot be purchased to replace them for the reason that the manufacturer of this fountain has gone out of business and also for the reason of Government priorities on the metals used in such parts.
Defendant was not in good faith when he purchased the parts. He either knew them to be stolen property or very strongly believed them to be. This, to our minds, is clearly shown by his actions. He *Page 327 
therefore by his actions became liable, in solido, with the boys who stole the property to plaintiffs for the damage caused them.
The salesman who sold plaintiffs the new fountain placed a value of $1,000 on the old fountain and thought he could sell it for that amount, due to the fact that no new fountains are being manufactured. He so advised plaintiffs at the time the new fountain was installed. Plaintiffs placed a value of $1,000 on the fountain, however, they stated they would have sold it for $850, but for no less. It is shown that the cost of repairing the old fountain after the parts were taken off, if they could be secured, would be seven or eight hundred dollars. The lower court placed the damage at $600 and we are unable to find from the record just how it arrived at that figure. It is shown that the maximum value of the fountain as it is now is only $50, and we are of the opinion that the testimony fairly shows the value of the fountain before it was destroyed by removing all the metal parts, was at least $850.
It therefore follows that plaintiffs have been damaged in the sum of $800 by the joint unlawful acts of the thieves and defendant, and plaintiffs are entitled to judgment against defendant in that amount.
The judgment of the lower court is therefore amended by increasing the amount of award to plaintiffs from $600 to $800, and as amended the judgment is affirmed, with costs.
TALIAFERRO and HAMITER, JJ., concur.